UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__6/25/2015__
```

-------------------------------------------------------------X

STEVE LOREN,

               Plaintiff,

          -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, DENNIS WALCOTT, as
Chancellor of the New York City Department of
Education, RELAY GRADUATE SCHOOL OF
EDUCATION, RALPH MARTINEZ, NICOLE
HILL, MARISOL ALICIA FERGUSON, and
VARIOUS "JOHN DOES",

               Defendants.

-------------------------------------------------------------X

13-CV-7597 (VEC)

MEMORANDUM
OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

      Plaintiff Steve Loren, *pro se*, initiated this lawsuit based on his experience in 2012 as a

participant in the New York City Teaching Fellows ("NYCTF") program, which trains

individuals to become public school teachers.  As part of his participation in the program, Loren

participated in an eight-day immersion program at the Relay Graduate School and was assigned

to a field placement at PS x089.  Two days before he completed his training, Loren was removed

from the NYCTF program; he was not offered a position as a teacher at the program's

completion.  After unsuccessfully challenging his removal from the program in state court, Loren

brought this suit against the New York City Board of Education ("BOE"), a number of BOE

employees whom he blames for his termination (with BOE, the "BOE Defendants"), and the

Relay Graduate School.  Loren alleges that Defendants conspired to deprive him of a position as

a public school teacher and brings a litany of claims relating to his participation in the program.

For the following reasons, none of his federal claims has merit; Plaintiff's case is accordingly dismissed.

## BACKGROUND[1]

The BOE established the NYCTF program to attract talented individuals to become teachers in the New York City public schools system.  Second Am. Compl. ("SAC") at 4.[2]  The SAC alleges that Fellows receive, at no cost, all education and training necessary to secure a "Transitional B Certificate," which permits them to become public school teachers.  *Id.*  The BOE typically hires Fellows who successfully complete the NYCTF program.  *Id.*  The NYCTF also helps Fellows to obtain an advanced degree in education, which was necessary for Fellows' post-program placements to become permanent.  *Id.* at 4-5.

Steve Loren is a 48-year-old New York resident who holds a Master of Business Administration degree and scored well on the New York State teacher licensing exams.  *Id.* at 30-31, 39.  Loren applied to participate in the NYCTF program and was accepted as a Math Fellow in April 2012.  *Id.* at 5.  Of the 900-Fellow cohort in 2012, 90 were Math Fellows.  *Id.*

All of the Fellows participated in an "immersion class" in their relevant subject areas; in May 2012, Loren participated in an eight-day "math immersion" class at the Relay Graduate School.  *Id.*  Loren's relationship with Relay started off on the wrong foot, however.  Although Relay had Loren's official MBA transcript and an unofficial version of his undergraduate transcript, Relay required him to submit his official undergraduate transcript (which he had

---

[1]       For the purposes of this motion the Court assumes the plausible allegations in Loren's Second Amended Complaint to be true.  *See La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 93 (2d Cir. 2014).

[2]       The SAC contains many unnumbered paragraphs; accordingly the Court cites to the relevant pages rather than paragraphs.

difficulties obtaining because of a financial block).[3]  *Id.* at 5-6.  Over Loren's repeated

protestations, Relay demanded that he produce his undergraduate transcript.  *Id.* at 6.  Ultimately,

Loren "had no choice but to expend considerable time and expense" to secure an official

transcript.  *Id.*

      With Loren's transcript finally in hand, Relay extended an official offer of admission; the

packet of materials that Relay sent included a media waiver providing that Relay students could

be videotaped by Relay.  *Id.* at 7.  Of the eight graduate programs with collaborative

relationships with the NYCTF program, only Relay required the Fellows to sign a media waiver

as a condition for admission.  *Id.*  Loren was "uncomfortable" with Relay's media waiver

requirement and believed that it was a condition of admission to Relay, sanctioned by the BOE.

*Id.* at 7-8.  Loren negotiated the language of the media release with Relay and ultimately signed a

revised version of the waiver.  *Id.* at 10.

      The Fellows were assigned to schools for four weeks of field experience beginning in

July 2012.  *Id.*  Loren was one of four Math Fellows assigned to PS x089 in the Bronx.[4]  *Id.*

During Loren's tenure at PS x089, Defendant Ralph Martinez was the school's principal and

Defendant Nicole Hill was a teacher at the school.  *Id.* at 3.  Defendant Marisol Alicea-Ferguson,

another BOE employee, was assigned to be Loren's coach.  *Id.* at 13, 4.  Loren was assigned to

teach a third grade class; unfortunately, much of his summer was spent "addressing faulty

computers" and other administrative obstacles.  *Id.* at 11.

---

[3]      Loren does not explain his difficulties obtaining his undergraduate transcript beyond asserting that "plaintiff had a financial bloack [sic] on his undergraduate transcripts, and it would take time and expense to obtain these transcripts."  SAC at 6.

[4]      PS x089, initially named as a defendant in this action, was dismissed from the action on October 1, 2014. Dkt. 34.

During Loren's second of four weeks, the BOE "excessed"[5] the teacher who had been assigned to serve as Loren's mentor. *Id.* at 12. This allegedly led to a string of problematic experiences for Loren, culminating in the day in which Loren scrambled to teach a class – set to be observed by Alicea-Ferguson and her supervisor – with insufficient preparation, allegedly because Loren's co-teacher called in sick at the last minute. *Id.* at 13-14. Although the class was rescheduled, Loren asserts that the rescheduling of this class, along with other unspecified actions, "constitute a pattern of conspiracy" against him. *Id.*

Two days before he completed the "field experience" portion of his training, Loren was terminated. *Id.* at 16. Loren claims that his termination had no legitimate basis and constituted impermissible discrimination. *Id.* Loren was "the only teaching fellow at [PS] x089 over 40 years of age," and, unlike his colleagues, Loren "was eligible for the[ ]highest level starting salary." *Id.* at 14. Loren alleges that his mentor believed that she was "excessed" because of "her age and relatively higher salary" and that Martinez's plans for the school favored younger teachers. *Id.* Loren alleges that this ageism is part of a broader DOE policy "of weakening teacher tenure protections, pruning high salary teachers from the teaching force," and generally favoring younger teachers. *Id.* at 14-15. Plaintiff argues that this policy is related to the "corporatization" of education, including increased reliance on charter schools. *Id.* at 15.[6]

Loren unsuccessfully challenged his removal from the NYCTF program in an Article 78 proceeding. *See Loren v. N.Y. City Dep't of Educ.*, 126 A.D.3d 419, 419 (1st Dep't 2015). Loren's Article 78 petition made factual allegations similar to those in the SAC, but in the Article 78 petition Loren alleged only that his termination was arbitrary and capricious. Fleming

---

[5]     The SAC alleges that "[t]he term 'excessed' denotes removal of a teacher from a particular school. This action is similar to a firing, [but] teachers have Union protections. . . ." SAC at 12.

[6]     Loren makes no attempt to explain why the BOE would have admitted him to the NYCTF program in the first place if the BOE's policy was to eliminate older teachers from the workforce.

Decl., Dkt. 70, Ex. 1.  After the Article 78 court rejected his claim, Loren brought this suit,

alleging a number of constitutional violations and state and municipal law claims against the

BOE, its employees, and Relay Graduate School.

Loren brings three federal causes of action: (1) First Amendment retaliation based on his

complaints about Relay's media waiver, SAC at 18-28; (2) an Equal Protection violation, based

on either "class-of-one," age, or disability discrimination, *id.* at 28-34; and (3) conspiracy to

interfere with his civil rights, *id.* at 34-40.  Loren also alleges nine state law tort claims.[7]

## DISCUSSION

Relay and the BOE Defendants separately move to dismiss Loren's claims.  Relay moves

to dismiss Loren's constitutional claims on the theory that Relay is not a state actor and did not

act under color of state law.[8]  The BOE Defendants challenge the merits of the constitutional

claims and assert that the state tort law claims are untimely as against the BOE.  All Defendants

also argue that Loren's claims are precluded by *res judicata* and collateral estoppel.  The Court

concludes that Loren's federal claims lack merit and declines to exercise supplemental

jurisdiction over Loren's state law claims; accordingly, Defendants' motions are GRANTED IN

PART and the case is DISMISSED.

---

[7]    Loren's state law claims include: (1) intentional interference with prospective economic advantage, SAC at 40-42; (2) breach of contract, *id.* at 42-44; (3) breach of the covenant of good faith and fair dealing, *id.* at 44-46; (4) age and disability discrimination, *id.* at 46-51; (5) defamation, *id.* at 51-53; (6) intentional infliction of emotional distress, *id.* at 53-56; (7) negligent infliction of emotional distress, *id.* at 56-57; (8) retaliation and wrongful discharge, *id.* at 57-58; and (9) civil conspiracy in committing all of the above torts, *id.* at 58-59.

[8]    Because Loren does not advance any plausible constitutional claims, the Court does not address Relay's arguments; the Court doubts, however, that Loren has adequately pled that Relay acted "under color of state law," insofar as he has even alleged that Relay played a role in BOE's decision not to hire him.  *See McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014).

In reviewing a motion to dismiss under Rule 12(b)(6),[9] courts "'accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.'" *Meyer v. JinkoSolar Holdings Co., Ltd.,* 761 F.3d 245, 249 (2d Cir. 2014) (quoting *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (alterations omitted)). "To survive a 12(b)(6) motion to dismiss, a 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "At this stage, dismissal is appropriate only where [Plaintiff] can prove no set of facts consistent with the complaint that would entitle [him] to relief." *Meyer,* 761 F.3d at 250. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice, and [courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (other internal quotations marks and citations omitted)).

"Even after *Twombly*, though, [courts] remain obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In their "review of the sufficiency of a *pro se* complaint such as [Loren's, courts] are constrained to conduct [their] examination with 'special solicitude,' interpreting the complaint to raise 'the strongest claims that it suggests.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475, 474 (2d Cir. 2006) (*per curiam*) (alterations omitted)).

---

[9]     In the Second Circuit consideration of collateral estoppel and *res judicata* are properly raised in a motion pursuant to Rule 12(b)(6).  *Scherer v. Equitable Life Assur. Soc'y of U.S.*, 347 F.3d 394, 398 (2d Cir. 2003); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498-99 (2d Cir. 2014).

### I.      Preclusion

In August 2012, Loren initiated an Article 78 proceeding in Supreme Court, New York

County, challenging his removal from the NYCTF program as "arbitrary and capricious" and

seeking reinstatement.  *See* Fleming Decl. Ex. 1.  The Article 78 court held that Loren – who, as

a Teaching Fellow, was akin to a probationary employee – was terminated with a "sound basis in

reason."  *Id.* Ex. 6 at 3 (citing a number of complaints about Loren, including his tone in

addressing his colleagues and his repeated use of his cellular telephone during class).  That

decision was affirmed by the First Department, which held that Loren "had no more rights than

those of probationary employees" and that "several complaints . . . made about petitioner's

performance" provided a good faith basis for his discharge.  *Loren*, 126 A.D.3d at 419.

Defendants argue that the Article 78 proceeding precludes Loren from asserting his

claims in this Court, invoking principles of *res judicata* and collateral estoppel.  Because a

generous reading of Loren's *pro se* complaint suggests the existence of claims that are not

identical to those in his Article 78 petition, the Court does not find that Loren's claims are

barred.  Principles of collateral estoppel might preclude some of the damages that Loren seeks,

but Loren has not alleged a plausible claim, rendering an analysis of the appropriate damages

unnecessary.

### A.  *Res Judicata*

"Res judicata applies where a 'final judgment on the merits bars a subsequent action

between the same parties over the same cause of action.'"  *Hanrahan v. Riverhead Nursing

Home*, 592 F.3d 367, 368 (2d Cir. 2010) (quoting *Channer v. Dep't of Homeland Sec.*, 527 F.3d

275, 279 (2d Cir. 2008) (emphasis omitted)).  "[I]n determining the *res judicata* effect of a state

court judgment on a plaintiff's federal statutory claims, the federal court must give that judgment

the same preclusive effect as would the courts of the state rendering that judgment."  *Joseph v.*

7

*Athanasopoulos*, 648 F.3d 58, 62 (2d Cir. 2011) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461 (1982)).

Claim preclusion does not bar relitigation of issues decided in an earlier proceeding if the earlier forum lacked authority to afford the full measure of relief sought in the later proceeding. "[W]here, as here, a section 1983 action is brought by an unsuccessful Article 78 plaintiff, . . . New York's claim preclusion rule does not apply because a state court entertaining an Article 78 proceeding does not have the power to award the full measure of relief available in subsequent section 1983 litigation." *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004) (citing *Davidson v. Capuano*, 792 F.2d 275, 278-79 (2d Cir. 1986)).  Accordingly, *res judicata* does not prevent Loren from litigating claims pertaining to his termination under 42 U.S.C. §§ 1981, 1983, and 1985, or from litigating any of his state or municipal law claims that do not sound in wrongful termination.

### B.  Collateral Estoppel

While *res judicata* does not prevent an Article 78 plaintiff from subsequently seeking relief under Section 1983, issue preclusion nevertheless bars such a plaintiff from re-raising issues that were fully addressed in the prior proceeding.  *Vargas*, 377 F.3d at 205.  New York law provides that:

> Collateral estoppel comes into play when four conditions are fulfilled: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015) (quotation marks and citation omitted); *see also Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 313 (2d Cir. 2005).

Loren had a full and fair opportunity to litigate the issues that the Article 78 court decided, and that proceeding yielded a valid and final judgment on the merits.  Accordingly, the operation of collateral estoppel hinges only on the identity of the issues that were actually decided in the Article 78 proceeding.  Justice Lobis, in evaluating Loren's petition, purported to reach two issues: first, whether the BOE "acted in an arbitrary and capricious manner . . . without a sound basis in reason" or in violation of state regulations when it terminated Loren, and second, whether the BOE's decision to terminate Loren was "in bad faith" or in contravention of contractual rights.  Fleming Decl. Ex. 6 at 3.  On appeal, the First Department affirmed that Loren was legally analogous to a probationary employee (rendering the regulations on which he relied inapplicable) and that his "discharge was made in good faith."  *Loren*, 126 A.D.3d at 419.  These issues may not be relitigated.

In this case, read liberally, Loren's SAC does not seek to challenge Defendants' adherence to the regulations that were found inapplicable and does not assert that his removal from the NYCTF program was arbitrary and capricious (although he comes close at times).  Affording Loren the deferential review due to a *pro se* litigant, the Court does not view Loren's claims to be "barred" by collateral estoppel.  Accordingly, the Court does not dismiss any of Loren's claims on this ground.  Principles of collateral estoppel do, however, inform the Court's analysis and would limit the issues that Loren would be permitted to press if the litigation were to proceed; because Loren has not stated a federal claim for which relief could be granted, however, those limitations do not affect the Court's analysis.

## II.     Federal Claims

Loren advances claims against all Defendants pursuant to 42 U.S.C. §§ 1981, 1983, and 1985.  The SAC does not, however, allege facts that, if true, would make Defendants liable to Loren for the wrongs he alleges.

### A.  Plaintiff Does Not State a Claim for First Amendment Retaliation

Defendants challenge Loren's allegation, pursuant to 42 U.S.C. § 1983, that they retaliated against him because he declined to sign Relay's media waiver.[10]  Loren alleges that his refusal to sign the waiver constituted protected speech and led to undesirable assignments at PS x089, and those assignments, in turn, resulted in his termination as a Teaching Fellow.  *See* SAC at 18-28.

"'To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant[s'] actions were motivated or substantially caused by plaintiff's exercise of that right; and (3) the defendant[s'] actions caused him some injury.'"  *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (quoting *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (*per curiam*) (alteration omitted)).  In addition to these basic requirements, "public employees cannot state a claim for First Amendment retaliation unless (among other requirements) they speak as citizens on matters of public importance." *Castine v. Zurlo*, 756 F.3d 171, 176 n.5 (2d Cir. 2014).

The SAC details Loren's First Amendment right to express his disagreement with Relay's media waiver requirement and alleges that Loren suffered injury – specifically, removal from the NYCTF program – at Defendants' hands.  But a "plaintiff asserting a First Amendment retaliation claim must establish that . . . 'there was a causal connection between [the] adverse action and the protected speech.'"  *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)).  Loren does not allege facts from which the Court could infer that he was removed from the

---

[10]     Loren specifically alleges that he informed the BOE and Relay that the media waiver requirement violated the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.  SAC at 18.

NYCTF program because of his complaints regarding Relay's media waiver, nor is it plausible that any such connection exists.

"Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003) (quotation marks omitted). Loren does not allege any direct evidence of retaliatory animus, such as language in his termination letter referring to the content or fact of his complaints. *Cf. Smith v. Cnty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015) (*per curiam*). Instead, Loren argues that he has indirect evidence of the causal link between his complaint and his assignments at PS x089 (which, he alleges, led to his termination).

Loren argues that a causal link between his complaint and his termination can be inferred from temporal proximity. Loren Mem. at 26-27. Loren expressed his concern about Relay's media policy to individuals in the NYCTF program's in early July 2012 and was terminated on July 31, 2012. SAC at 26, 16. In some cases, alleging temporal proximity is a sufficient basis to establish a *prima facie* case of retaliation. *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (*per curiam*) (addressing retaliation under Title VII). But the fact that a plaintiff engaged in "protected activity" shortly before an adverse action is not circumstantial evidence of First Amendment retaliation when the "protected activity" refers to speech about which the defendant would be thoroughly ambivalent. If Loren had posted in an online forum about the wisdom of U.S. intervention in Syria, for example, his post would clearly be "protected activity" under the First Amendment, but if he were terminated from the NYCTF program the next day – or even hours later – Loren could not rely on temporal proximity, without more, to plead a cause of action for First Amendment retaliation. If, conversely, Loren had published a screed attacking the principal of PS x089 or otherwise denigrating the NYCTF program and he

was terminated quickly thereafter, the temporal proximity of the two could allow the Court to infer a causal connection.  Essentially, plaintiffs must plead a plausible link between the protected activity and the adverse action, or at least allege protected activity that logically could have been connected to his discharge.

Loren seeks to overcome the absence of a logical connection between his complaint about Relay's media policy and his termination by arguing that the BOE has adopted a policy of "corporatization."  SAC at 25-27.  Pursuant to this policy, Loren asserts, the BOE sought to "progressively 'privatize' public education through policies intending to replace older more expensive teachers with younger less expensive teachers while progressively channeling greater amounts of public educational resources into charter schools and other private and quazi [sic] private institutions that lack mechanisms of public accountability equal to the public institutions they intend to displace."  *Id.* at 25.  This was, according to Loren, the "obvious reason[]" motivating Defendants' "sabotage of plaintiff[']s participation in the NYCTF program and his ultimate termination from the program."  *Id.*

What is obvious to Loren is opaque to the Court.  Loren has not plausibly alleged that the BOE had *any* interest in Relay's media waiver, much less enough interest to take an adverse action against an otherwise-viable candidate because he consented only to a modified version of the form.  Regardless of whether Loren's discussion of the "corporatization" of education in New York City is plausible (and it certainly is more plausible than some of his earlier allegations related to the Central Intelligence Agency's mind control and non-consensual human experimentation, *see* First Am. Compl., Dkt. 7, at 21-27), Loren does not allege a plausible link between his concerns over the waiver (which were eventually resolved) and the "sabotage" of his field placement.  Loren alleges that the administrators to whom he voiced his concerns about the media waiver shared his complaints with the principal and teachers at PS x089, "who then took

action to sabotage plaintiff[']s participation in the pre service training period . . . by way of initially denying him appropriate subject and grade level teaching experiences and then repeatedly denying him available appropriate teaching experience." SAC at 27. This allegation is facially implausible – the link between any discomfort with Loren's refusal to sign Relay's media waiver and Loren's assignments at PS x089 is not logically apparent and has not been adequately alleged. The BOE's alleged preference for charter schools and experimental teaching methods, decried by Loren, does not explain why his supervisors at one public school would be inclined to "sabotage" his performance based on his discomfort with the media policy at a different, unrelated school, to which Loren was also assigned as part of the NYCTF program.

Loren has not alleged any plausible facts from which the Court could infer that there was *any* causal connection – let alone a retaliatory connection – between his complaints about Relay's media waiver and his assignments at PS x089. Accordingly, he has not alleged that the Defendants engaged in First Amendment retaliation; his first cause of action is therefore dismissed.[11]

## B. Plaintiff Does Not State an Equal Protection Claim

Loren's equal protection claim fares no better. There are three potential claims that Loren could be seeking to advance, but none is adequately pled. First, Loren could be advancing a "class-of-one" equal protection challenge, alleging that he "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*)). Read liberally, the SAC could

---

[11]     Even if Loren had alleged facts sufficient to support a claim that his discharge was in retaliation for his complaints about the media waiver, he still would not have stated a claim of actionable retaliation because his complaints did not relate to a matter of public importance. *Castine,* 756 F.3d at 176 n.5; *Ross v. Breslin*, 693 F.3d 300, 305-06 (2d Cir. 2012).

also allege that Plaintiff was discriminated against because of his age or disability.  *See* SAC at 28; *cf. Volpi v. Cent. Moriches Union Free Sch. Disc.*, 9 F. Supp. 3d 255, 258 (E.D.N.Y. 2014). Loren has not alleged facts sufficient to support any of these claims.

Class-of-one equal protection claims permit plaintiffs to allege that they were treated differently from all others similarly situated without any rational basis.  "Where a class-of-one theory is available, the plaintiff must allege 'that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate governmental policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.'"  *Fahs Constr. Grp. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (*per curiam*) (quoting *Clubside, Inc. v. Valentine*, 468 F.3d 144, 159 (2d Cir. 2006)). Class-of-one claims are "not available in the public employment context," however.  *Fortress Bible Church*, 694 F.3d at 222 (citing *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 598-99 (2008)).  Loren's claim is predicated on his removal from the NYCTF program; this action was undertaken by the BOE as Loren's employer.[12]  Accordingly, no "class-of-one" claim lies.

Loren also claims that the BOE discriminated against him because of his "age and disability."  SAC at 28, *see id.* at 30 (identifying Loren's age as 48 and his disability as "bowel[-]related complications" that require him "to use a bathroom frequently").  To plead discrimination under the ADEA, a plaintiff must allege that (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4)

---

[12]     Loren argues, unpersuasively, that he is challenging the BOE's decision not to provide him with a license to become a public school teacher. Loren Mem. 31-34.  But the fact that the BOE provides accelerated licenses to the people who complete its training program does not transform decisions regarding applicants' positions into "licensing" decisions distinct from employment decisions.  The BOE was acting in its capacity as an employer in assigning Loren to teach particular classes and in evaluating his performance as a teacher.  *See Loren v. Levy*, No. 00-CV-7687, 2003 WL 1702004, at *7 (S.D.N.Y. Mar. 31, 2003) (Chin, J.) (treating a NYCTF participant as a public employee for discrimination and First Amendment retaliation claims).

the adverse action occurred under circumstances giving rise to an inference of discrimination. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009); *see also Caskey v. Cnty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order) (applying this standard at the pleadings stage). This is a *de minimis* burden, particularly at the motion to dismiss stage, but Loren has not alleged *any* facts suggesting that the BOE's decision to remove him from the NYCTF program occurred under circumstances giving rise to an inference of discrimination. Instead, Loren alleges that "Principal Martinez, being motivated largely by cost considerations, . . . comprehended plaintiff as an unacceptable cost due to his age and disability." SAC at 32. Loren notes that his "starting salary of $58,000 would be considerably higher than other fellows['] at [PS] x089." *Id.* Instead of alleging any facts giving rise to the inference that Defendants were motivated by Loren's age, Loren cites other factors leading to his termination.[13] Loren's assertions that cost is "unfairly associated with age," Loren Mem. at 36, may or may not be true in broad strokes, but the SAC is devoid of allegations that salary was being used as an impermissible proxy for age or vice-versa. *Cf. Wade v. N.Y. City Dep't of Educ.*, No. 11-CV-5278(LGS), 2014 WL 941754, at *10 (S.D.N.Y. Mar. 10, 2014).

Loren's only claim related to his disability appears to be that he was informed that he could not leave his classroom of pupils to go to the bathroom.[14] SAC at 38-39. This fails to meet the loftier standard required to raise a "failure to accommodate" claim to the level of an equal protection violation. *See Toledo v. Sanchez*, 454 F.3d 24, 33 (1st Cir. 2006); *see also*

---

[13]     Loren *does* allege that individuals Defendants maliciously defamed him because of his "age and disability (bowel condition)." SAC at 36. But he cites no basis for the assertion that any negative words uttered about him were motivated by discriminatory animus, resorting instead to a prolonged exegesis of the interaction between age, disability, and the BOE's attempt to circumvent the United States Constitution by pursuing its "policy of 'corporatized' public school reform." SAC at 36-38.

[14]     Plaintiff alleges that "two other adults" were in the classroom so that his frequent bathroom trips would not leave the classroom of third grade students unattended. SAC at 50.

*Castro v. City of New York*, 24 F. Supp. 3d 250, 272 (E.D.N.Y. 2014) ("[I]t is not clear that such

a claim is even cognizable under § 1983.").  Loren does not allege a single fact that would

suggest that any of the "sabotage" alleged was motivated by his disability.[15]

### C.  Plaintiff Does Not State a Claim under 42 U.S.C. §§ 1981 or 1985

Loren's third cause of action asserts vaguely-defined claims under 42 U.S.C. §§ 1981 and

1985.  Neither statute supports a claim as articulated in the SAC.  First, Loren does not respond

to Defendants' assertions that Section 1981 is inapplicable to his age and disability

discrimination claims; accordingly, the Court deems these claims abandoned.[16]  *See, e.g.*, *Chau*

*v. Lewis*, 771 F.3d 118, 123 n.3 (2d Cir. 2014); *see also Jackson v. Fed. Express*, 766 F.3d 189,

195-96 (2d Cir. 2014) (noting that courts are solicitous of *pro se* parties in terms of waiver but

noting that partial responses such as Loren's are more likely to imply abandonment of

undefended arguments).  Second, Loren does not plausibly allege that Defendants committed any

actions "with discriminatory animus, as required to state a claim under 42 U.S.C. § 1981 or 42

U.S.C. § 1985."  *Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) (*per curiam*).

"[C]onclusory allegations that the defendants violated [Plaintiff's] rights 'because of their

discriminatory intent' and 'based on his race and color' [are insufficient to state a claim]."  *Id.*

(quoting *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (*en banc*)).  Loren's farfetched

claims sounding in conspiracy (for example, that "personnel of PS x089 deliberately conspired to

sabotage or purposefully provided defective computers in his classroom that conspiring

---

[15]      Even if the SAC stated an Equal Protection claim, Loren has not alleged the involvement of Dennis Walcott or Relay in any of the events discussed in this cause of action.

[16]      Loren's claim under Section 1981 is meritless in any event.  *Accord Gibbs v. Metro. Transp. Auth.*, No. 13-CV-1583(ILG), 2014 WL 5842833, at *6 (E.D.N.Y. Nov. 12, 2014) ("Section 1981 applies only to instances of racial discrimination, and plaintiff's age discrimination claim under the statute fails accordingly."); *Geneste v. AGMA, Inc.*, No. 12-CV-5801(WFK), 2014 WL 5475392, at *11 (E.D.N.Y. Oct. 29, 2014) (same); *Sareen v. Port Auth. of N.Y. & N.J.*, No. 12-CV-2823(PAE), 2013 WL 6588435, at *9 (S.D.N.Y. Dec. 16, 2013).

defendants knew would take up undue time and compromise plaintiff's ability to spend time

teaching," SAC at 40) do not provide a plausible basis for his Section 1985 claim that

Defendants conspired to deprive him of his constitutional rights.  Accordingly, Loren's third

cause of action is dismissed.[17]

### III.    State and Municipal Law Claims

Loren also advances multiple state and municipal law claims.  *See* SAC at 40-58.

"Because all of plaintiffs' federal claims fail," the Court declines to exercise supplemental

jurisdiction over the state and municipal law claims.  *Phillips v. City of New York*, 775 F.3d 538,

544 n.7 (2d Cir. 2015); *see* 28 U.S.C. § 1367(c)(3)).  The "decision whether to exercise []

jurisdiction after dismissing every claim over which [a court] had original jurisdiction is purely

discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see Delaney v.*

*Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (*per curiam*).  Although Plaintiff sought to

initiate this action in 2013, he required multiple extensions of the statutory deadlines to effect

service of process and multiple lengthy extensions to respond to Defendants' motion to dismiss;

as a result, although this case is nearly two years old, the parties have not engaged in significant

discovery, and the Court has not evaluated the merits of Plaintiff's state law claims.  Put

differently, despite its age, the case is still "at a relatively early stage."  *Valencia ex rel. Franco*

*v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).  Accordingly, there would be no benefit to judicial

economy should the Court exercise discretionary jurisdiction over Plaintiff's remaining action.

The Court declines to do so; Plaintiff's state law claims are dismissed without prejudice for lack

---

[17]    The parties' discussion of municipal liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), for any constitutional violation is moot; because no underlying violation has been pled, *Monell* liability cannot lie.  *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006).

of subject matter jurisdiction. *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

## CONCLUSION

For the foregoing reasons, Plaintiff's Second Amended Complaint is DISMISSED with prejudice as to his federal causes of action and without prejudice as to his state law claims. Plaintiff has already had an opportunity to amend his complaint to address the deficiencies identified by the Defendants, and any further amendment would be futile. Accordingly, the Clerk of the Court is respectfully directed to terminate docket entries 65 and 69 and to close the case. The Clerk of the Court is directed to mail a copy of this opinion to Plaintiff and to note service on the docket. The Court certifies that any appeal would not be taken in good faith under 28 U.S.C. § 1915(a)(3) and would be frivolous because it "lacks an arguable basis in law or fact." *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (*per curiam*) (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

**SO ORDERED.**

**Date:  June 25, 2015**                                 **VALERIE CAPRONI**
       **New York, New York**                       **United States District Judge**